The judgment of the court was pronounced by
Preston, J.
The plaintiff alleges, that the defendant, Caroline M. Hunt, occupied a house and outbuildings on three lots of ground in the town of Clinton, as a tenant, for the purpose of keeping a house of entertainment, from the 1st of January, 1843, until the commencement of this suit on the 12th of June, 1845; that the rent was well worth the sum of thirty dollars a month; that the property was during the time in the possession of the sheriff, by virtue of an order of seizure and sale in the suit of T. L. Andrews against Ezra Courtney and others; that he became the purchaser of the property on the 1st of June, 1845; and that he was subrogated to all the rights, liens and revenues of the property from the first seizure of the same by an agreement with Thomas L. Andrews, dated the 30th of May, 1845.
The defendant filed a general denial, and put the plaintiff on the strict proof of his claim for rent.
By a public act of sale, dated the 13th of January, 1840, Thomas L. Andrews sold the property, for the occupancy of which rent is claimed, to Ezra Courtney and John B. Taylor, and the latter afterwards sold all his interest in the same to Ezra Courtney, who thus became the sole owner of the property.
In September, 1842, Andrews caused an order of seizure and sale to be issued against the property for the price which Ezra Courtney had failed to pay. The sheriff seized the property, and also “ all the rights and credits in the hands of Mrs. C. M. Hunt, of whatsoever name or nature they may consist.”
Ezra Courtney enjoined the sale. The injunction was dissolved, with damages against him and his security in the injunction bond. They appealed to the Supreme Court. The security on the injunction bond prosecuted the appeal; and the judgment of the district court was reversed at the March term of the Supreme Court in 1845, on the ground, that the order of seizure and sale was not authorised by law.
*176 In the meantime, on the 6th of February, 1845, Courtney agreed with Andrews to abandon his appeal; and that the order of seizure and sale should be executed. The consideration was, that Andrews should remit more than half his claim ; and for the balance Courtney agreed to give' him the three notes of himself and son, Micajah Courtney, for $1000 éach, payable respectively in 1846, 1847 and 1848.
During the transactions between them, the wife of Ezra Courtney had died. He had administered upon her estate ; and it was agreed, that her interest in the property should be sold by the court of probates at the same time that Ezra Courtney’s interest was sold by the sheriff. In pursuance of these agreements between the plaintiff and defendant, the sheriff sold the property on the 7th of June, 1845, to Micajah Courtney for ten dollars, on twelve month’s credit. On the same day the probate judge sold the interest of Mrs. Courtney in the property to the plaintiff for the like sum of ten dollars.
If rents were due by Mrs. Hunt, were they transferred to the plaintiff by these sales? We do not think so. They are not described, or mentioned in the sheriff’s return. None of the rent now sued for was due when the seizure, under which the sale was made, took place. Indeed the sale was made on twelve month’s credit, in pursuance of an offer for cash, with benefit of appraisement made on the 8th of November, 1342, before any of the rent now claimed had accrued.
The probate judge described in his adjudication the real property alone, and not the' rent due by Mrs. Hunt. So that the plaintiff-did not acquire title to the rent for which he sues by these judicial sales. But in pursuance of the agreement of the 6th of February, 1845, already mentioned, Micajah and Ezra Courtney on the 30th of May, 1845, gave to the agent of Andrews their three notes, each for $1000, payable respectively on the 1st of March, 1846, 1847 and 1848 ; and he, in consideration thereof, sold to Micajah Courtney all his right to the proceeds or advantages arising from his order of seizure and sale; and his claim for any rents or revenues arising from the property described in the “order of seizure and sale.” If the plaintiff is entitled to sue for the rent, his right arises from this transfer alone. But the rent sued for did not belong to Andrews, who makes the transfer. It belonged to Ezra Courtney, who was the sole owner of the premises during the time the rent' accrued.
We have thus stated what is clearly the legal effeet of the agreement. But as Ezra Courtney joined in the consideration for which Andrews transferred to Micajah Courtney rents not due to himself, but to Ezra Courtney, we might conclude that in equity he was entitled to Ezra Courtney’s rights. If we did so conclude, the evidence leaves it so doubtful for what amount of rent Mrs. Hunt was liable, or whether she was liable for any, that we should not feel authorised to reverse the judgment of the district court.
It was objected on the trial of the cause, that W. H. Oreen could not be examined as a witness for the defendant, because he was her surety on a bond given to release the provisional seizure of her furniture and effects on the premises. He was properly admitted as a witness, because, long before he was examined, he was exonerated as security, by the substitution of other security, that was accepted in his place.
It was also objected, that the defendant could not offer, under the general issue, evidence, that she occupied the premises without liability to pay rent. The plaintiff did not allege an express agreement to pay rent, but an implied obliga *177 tion, arising from the occupancy of valuable premises. The defendant offered the evidence to rebut the presumption of such an obligation; for which purpose it was certainly admissible.
On the merits we think the evidence preponderates in favor of the defendant. Ezra Courtney offered her as a witness, in 1844, on the trial of his injunction suit, to prove that the rent of the premises was worth very little, and even that he told her, that if she repaired them it must be at her own expense. He did not therefore expect the payment of rent.
The testimony of Mr. Winter Turner and Green induces us to think that Andrews did not expeet to recover rent from Mrs. Hunt during the time the property was under seizure. They, with others, satisfy us that the repairs she put on the premises were nearly worth the rent, and that .the property while under seizure was better with than without an occupant.
The sheriff might have leased the premises and collected the rent, in pursuance of article 658 of the Code of Practice, as in case of a writ of fieri facias. As neither party required him to do so, and as he did not attempt it during the two years and a half that the property was in his possession under seizure, the district judge might fairly conclude, that both parties were willing, and the sheriff also, that Mrs. Hunt should be keeper of the seized premises, during the long litigation respecting them, without paying rent for their occupancy; and that the defendant believed she was occupying them for the care she bestowed upon them, and the repairs she made.
We are therefore of opinion, that the judgment of the district court should be affirmed, with costs.