MONROE, J.
In May and July, 1906, the Great Southern Lumber Company entered into certain contracts with Stevenson & Adams for the construction of a number of buildings in the parish of Washington, which contracts were recorded, and, having been executed, the last payment thereunder was made in September, 1907. In March, 1907, two other contracts were made between the same parties, contract A, for the erection of 52 dwellings, and contract B, for the erection of a hotel and other buildings, which were not recorded, and upon which, in December, 1907, the contractors defaulted. The company, (meaning plaintiff) thereupon, after notice to the surety of the contractors to complete the work, had it completed under contracts with Plint, Irving & Stoner Company, and Knoxville Plumbing Company (under which last-mentioned name John P. Moss conducted his business), at a cost which left a balance due, under the contracts with Stevenson & Adams, of $24.607.95, and the company deposited that amount in court and called the creditors of said original contractors to interplead with regard to its distribution. After hearing, the judge a quo found that the amount so deposited correctly represented the balance due and (on May 9, 1911) adjudged that payments therefrom should be made as follows:
1. Costs of this proceeding..................
2. Gassie & Beary, stenographers...........$ 60 00
3. J. Vol Brock and W. J. Dobson, auditors 1,000 00
4 Gordon G. Goodbee, attorney for absent creditors ................................. 200 00
5. Travelers’ Insurance Company (with interest and costs)...................... 1,168 68
6. A. F. Leonhardt & Co. (with interest and costs) ............................... 1,126 07
7. Balance to be distributed among the following named creditors in proportion the amounts of their respective judgments, to wit:
A. J. Nelson Manufacturing Company.. 6,951 00
Ivy G. Kittridge.......................... 310 80
Flint, Irving & Stoner Company........ 13,098 93
Interstate Electric Company............ 1,316 83
H. W. McLean............................ 169 83
B. P. Burke...........................'.... 148 85
Salmen Brick & Lumber Company, Limited .................................. 2,777 40
A. Baldwin & Co., Limited............... 4,985 61
The plea of the prescription of one year, against the claims of laborers, was sustained, save where acknowledged accounts had been filed, in which cases, it was overruled; but those claims and all others, save as above stated, were rejected, as claims against the plaintiff company, with reservation, as to the laborers, of such rights as they may have against Stevenson & Adams. Prom the judgment -so rendered, the following named parties appealed, or attempted to appeal, viz.: By joint motion, May 9, 1911, A. J. Adams and 23 other laborers. By joint peti *994 tion, May 20, 1911, J. J. Pounds and 35 other laborers. By' two joint petitions, May 20, 1911, True Tagg Paint Company; Campbell Glass & Paint Company; Evans Manufacturing Company; Knoxville Plumbing Company ; John P. Moss; and De Wing & Sons.
On Motions to Dismiss Joint Appeals of J. J. Pounds et al.
I. Flint, Irving & Stoner Company move to dismiss the joint appeal of J. J. Pounds • and others, on the ground “that no proper citation has issued, to mover herein.” And A. Baldwin & Co., Limited, H. W. McLean, A. J. Nelson Manufacturing Company, Travelers’ Insurance Company, Ivy G. Kittridge, Salrnen Brick & Lumber Company, New Orleans National Bank, and Interstate Electric Company present a similar motion, based on the ground stated, and the further grounds:
“That there was no ' * * * prayer for citation of a large number of indispensable parties to the appeal, particularly the Great Southern Lumber Company, plaintiff and appellee; Stevenson & Adams, defendants and appellees; A. T. Stevenson and F. B. Adams; J. P. Moss; the Knoxville Plumbing Company; the Campbell Glass & Paint Company; I-ly. Sanders Company; Alfred Hiller & Co.; Wabash Screen Door Company; F. Codman Ford; the Commercial Germania Bank & Trust Company; receivers of L’Hote Manufacturing Company; White-ca-stle Lumber & Shingle Company; Cosmopolitan Engineering Company; United States Gypsum Company; New Orleans National Bank; De Wing & Sons; True Tagg Paint Company; Evans Manufacturing Company; et al.”
[1]1. The petition of J. J. Pounds and others prays for service and citation on Travelers’ Insurance Company, A. J. Nelson Manufacturing Company, A. F. Leonhardt & Co., Flint, Irving & Stoner Company, Ivy G. Kittridge, Interstate Electric Company, H. E. McLean, B. F. Burke, Salrnen Brick & Lumber Company, Limited; but there is no such prayer as to any other party to the litigation, nor was any other party served with 'copies of the petition, order of appeal, or citation. There appears, however, to have been a written, acceptance of service of petition and order of appeal and waiver of citation, by counsel, on -behalf of A. F. Leonhardt & Co., and an acceptance of service of petition and order of appeal similarly signed on behalf of the other parties above named, which acceptances and waivers -carry with them, in the one case as well as the other, waivers of citation. Hill v. Bowden, 3 La. Ann. 258.
[2] 2. The petition contains no prayer for service of petition or citation, nor was there any, on Great Southern Lumber Company, J. P. Moss, Knoxville Plumbing Company, Campbell Glass & Paint Compány, De Wing & Sons, Evans Manufacturing Company, or A. J. Adams and others; but the parties so named have waived such service and citation by appearing in this court, through counsel, and arguing the case upon its merits, without moving to dismiss the appeal.- Hen. Dig. vol. 1, p. 71.
[3] 3. The petition contains no prayer for service of petition or citation, nor was there such service or citation upon, nor waiver of the same by, Alfred Hiller & Co., Wabash Screen Door Company, F. Codman Ford, Commercial Bank & Trust Company, receivers, Whitecastle Shingle & Lumber Company, Cosmopolitan Engineering Company, United States Gypsum Company, New Orleans National Bank, Denham & Moore, or A. J. Den-ham, or A. P. Moore (the members of that ordinary partnership), and a few others; but the demands of the parties thus referred to were rejected by the trial judge, they took no appeals, are entitled to no relief in this court, and nothing is asked against them beyond the affirmance of the judgment appealed from. They have therefore no interest in what may be decided here, and there was no reason for citing them to appear.
[4] 4. There was no prayer for, or, service or citation upon Stevenson & Adams, or A. T. Stevenson, or F. B. Adams, members of *996 that ordinary partnership; or upon Gassie or Beary, stenographers; J. Yol Brock or W. J. Dobson, auditors; or Gordon G. Good-bee, attorney for absent creditors. And those omissions are fatal to the appeal; for the parties thus named, are interested that the judgment appealed from should be affirmed, and are therefore necessary parties.
“No appeal to the Supreme Court shall be dismissed on account of any defect, error, or irregularity of the petition, citation, or order of appeal, * * * or in the citation of appeal or service thereof, * * * whenever it shall not appear that such defect, error or irregularity may be imputed to the appellant or his attorney; but in all cases the court shall grant a reasonable time to correct such defects, errors or irregularities, in case they are not waived by the appellee. * * * ” Act March 20, 1839, par. 19; O. P. art. 898; Act 45 of 1870 (Extra Sess.) § 11, p. 101.
“Where it is the fault of the appellant that citation has not issued, he cannot be relieved under act of 20 March, 1839, paragraph 19. So, when the petition of appeal does not pray for citation, and, none having been applied for, none was issued, the appeal on motion, will be dismissed.” Succession of Perret, 17 La. Ann. 302; State ex rel. Freret v. Wickliffe, 21 La. Ann. 755; Miltenberger v. Pipes' Estate, 23 La. Ann. 267; Escoubas v. Calcasieu Co., 33 La. Ann. 484; Baird’s Heirs v. Russ, 33 La. Ann. 920; Handlin v. Dodt, 110 La. 937, 34 South. 881; Succession of Le Sage, 112 La. 858, 36 South. 757; Hen. Dig. vol. 1, p. 59, Nos. 15, 25, p. 84, No. 32, etc.
This court will, ex officio, take notice of want of proper parties for a final decree. Swearingen v. McDaniel, 12 Rob. 203; Succession of Perry, 4 La. Ann. 577; Robert v. Ride, 11 La. Ann. 409.
The joint appeal of J. J. Pounds, George Morris, F. ,H. Snow, John Murray, J. J. Weaver, B. Bowers, J. R. Beecher, W. M. Baebilder, Jas. Delrose, C. F. Ellis, B. Ellis, C. F. Erland, H. R. Hollmer, H. C. Floyd, A. F. Grant, Wm. Hysong, T. J. Howard, David Humber, K. K. Kissell, Henry McWilliams, J. M. Lorcheim, Louis Lyons, J. E. Weaver, John Sullivan, Edward Taylor, E. Westman, W. E. Weaver, Chas. Soderberg, Chas. Weaver, C. L. Spence, James A. Towner, W. H. Hemphill, and J. R. Kelly, should therefore be dismissed.
On Motion to Dismiss Joint Appeal of True Tagg Paint Company et al.
II. Flint, Irving & Stoner Company have moved to dismiss the joint appeal of True Tagg Paint Company, Knoxville Plumbing Company, John P. Moss, Evans Manufacturing Company, Campbell Glass & Paint Company, and De Wing & Sons, on the ground that no proper citation has been issued to it; and it annexes to its motion the citation said to have been actually served upon it which is in the usual form of a citation to answer to a suit in the district court.
A. Baldwin & Co., Limited, W. H. McLean, A. J. Nelson Manufacturing Company, Travelers’ Insurance Company, Ivy G. Kittridge, Salmen Brick & Lumber Company, New Orleans National Bank, and Interstate Electric Company present a similar motion, on the grounds:
"(1; No proper citation to any appellee and no proper service of petition of appeal; tne petition at page 414 not having been served, at all, and the other petition not correctly served.
, “(2) Indispensable parties not cited; no citation prayed for them; particularly A. T. Stevenson and Frank B. Adams, John P. Moss, and De Wing & Sons.
“(3) Citation prayed for and actually served on other indispensable parties' through B. D. Talley, attorney, although the said parties were present and residents of the parish of the court a qua.
“(4) The petition of appeal, on pages 411 and 414 of the transcript, is erroneous because it includes the name of John P. Moss, in the petition, and the name of De Wing & Sons, in the order; whereas the original petition of appeal contains neither of those names, as will fully appear by the certified copy of the petition, at page 411, annexed hereto.
“(5) There is no proper bond of appeal, and the so-called bond of appeal was filed too late.
“(6) John P. Moss has filed no bond whatever.”
There appears in the transcript, at page 411 what purports to be a copy of a joint petition for appeal by “True Tagg Paint Company, Knoxville Plumbing Company, JohnP. Moss, Evans Manufacturing Company, Campbell Glass & Paint Company, De Wing & Sons,” praying that:
*998 “All necessary -parties as well as Great Southern Lumber Company; Travelers’ Insurance Company; A. F. Leonhardt & Co.; A. J. Nelson Manufacturing Company; Ivy G. Kittridge; Flint, Irving & Stoner Company; Interstate Electric Company; H. W. McLean; B. F. Burke; Salmen Brick & Lumber Company ; A. Baldwin '& Co., Limited : Gordon W. Goodbee, attorney for absent creditors; B. D. Talley, attorney for A. J. Denham et ah ; Stevenson & Adams; J. P. Moss; Hy. Sanders Company; Alfred Hiller & Co., Limited; Slidell Brick Works; Wabash Screen Door Company; F. Codman Ford ; Commercial Ger-mania Trust & Savings Bank, receivers; Whitecastle Shingle & Lumber Company; Cosmopolitan Engineering Company ; United States Gypsum Company; New Orleans National Bank; and Campbell Glass & Paint Company —be cited to appear and answer this appeal.”.
The order of appeal, signed by the judge, of date May IS, 1911 (though the petition was not filed until May 20th), runs in favor of True Tagg Paint Co., De Wing & Sons, Knoxville Plumbing Company, Campbell Glass & Paint Company, and Evans Manufacturing Company (the name of John P. Moss being omitted). And there is indorsed upon the petition acceptance of service and waiver of citation by all the parties upon whom citation is prayed, except Flint, Irving & Stoner Company, B. D. Talley, attorney for A. J. Denham et al.,'Alfred Hiller & Co., Limited, Campbell Glass & Paint Company, and Stevenson & Adams. Denham & Moore and Alfred Hiller & Co., Limited, are not necessary parties, as their demands were rejected, they took no appeals, no change to their prejudice is asked in the judgment appealed from and hence they are without interest. It was unnecessary to cite Campbell Glass & Paint Company, as that company is one of the appellants whose appeal is in question; but Flint, Irving & Stoner Company were entitled to citation, and, notwithstanding that appellants were notified, by the motion to dismiss, filed on July 1, 1911, that it had not been served, no effort to serve it appears to have been made up to the date of the submission of the case, on May 11, 1912. Beyond that, there was no prayer for the citation, no citation, and no waiver of citation upon, or on behalf of, A. T. Stevenson or F. B. Adams of the ordinary partnership of Stevenson & Adams, or upon Gassie & Beary, or Yol Brock and Dobson, or either of them, and yet they are necessary parties to the appeal. There is what purports to be a copy of another petition for appeal in the transcript (at page 414), filed on May 20, 1911 (the same day as the one to which we have just referred), wherein the petitioners are “True Tagg Paint Company, John P. Moss, or Knoxville Plumbing Company, Evans Manufacturing Company, Campbell Glass & Paint Company, and De Wing & Sons,” and wherein the parties asked to be cited are the same as in the former petition, save that the names of John P. Moss and Campbell Glass & Paint Company are omitted, as is also the name “B. D. Talley, attorney for A. J. Denham et al.,” for which latter is substituted the name “B. D. Talley, attorney for A. J. Adams et al.” There is annexed to the petition in question an affidavit, by counsel, to the effect that the judge is “now absent from the parish,” and the order of appeal is signed by the clerk, bears date May 20, 1911, and grants the appeal to “True Tagg Paint Company, John P. Moss, Knoxville Plumbing Company, De ' Wing & Sons, Evans Manufacturing Company, and Campbell Glass & Paint Company. There is, however, but one bond of appeal filed in connection with the two petitions, which, as it appears in the transcript, reads, in part:
“Know all men * * * that we, Campbell Glass & Paint Company, Knoxville Plumbing Company, True Tagg Paint Company, De Wing & Sons and Evans Manufacturing Company, as principals, are held. * * * Whereas, the above bounden * * * have filed a petition of appeal. * * * Now the condition of the above obligation is such that if tbe above-bound Knoxville Plumbing Company, True Tagg Paint Company, De Wing & Sons, Evans Manufacturing Company prosecute their appeal and shall satisfy whatever judgment may be rendered against them. * * * ”
*1000 The name John P. Moss does not appear in the bond at all, and the name Campbell Glass & Paint Company does not appear in the condition, nor is there any condition that the appellants shall prosecute their appeal; and, whilst, upon the argument on the motion to dismiss, their counsel filed another and presumably corrected copy (duly certified), which shows that the original bond contains the condition above referred to, it also shows, as does the copy in the transcript, the entire omission of the name of John P. Moss and the omission, from the condition, of the name of Campbell Glass & Paint Company. Prom the certified copy, annexed to the motion to dismiss, of the petition of appeal which was presented to the judge, it appears that the petitioners were True Tagg Paint Company, Knoxville Plumbing Company, Evans Manufacturing Company, Campbell Glass & Paint Company, and De Wing & Sons; but that the order of appeal was granted to True Tagg Paint Company, John P. Moss, Knoxville Plumbing Company, Campbell Glass & Paint Company, and Evans Manufacturing Company. There was therefore, in the first attempt, no petition for appeal by John P. Moss and no ordér of appeal in favor of De Wing & Sons.
Whether the second petition and order of appeal were intended as substitutes for, or supplements to, the first, the result is the same, as the only bond furnished by the appellants appears to have been furnished under the first petition and order and cannot serve the purposes of the second.
There is in the transcript an affidavit by John P. Moss to the effect that he conducts his business under the trade name of Knoxville Plumbing Company, and it is argued that, he and Knoxville Plumbing Company being one and the same, the appeal of the latter should be sustained. We are unable to concur in that view. The petition, for attachment, in which the claim in question is asserted, reads, in part:
“The petition of John P. Moss, who resides in the city of Pittsburg, * * * where he does business and trades under the trade-name of Knoxville Plumbing Company, with respect represents: That Steyenson & Adams * * * are justly and truly indebted unto your petitioner ; * * * that your petitioner is the bona fide owner and holder * * * of a certain promissory note,” etc.
And the prayer is that “your petitioner” have judgment, and that “your petitioner” be paid by preference, etc. It is true that, considering the law (R. S. 2G68, 2GG9) which declares that “no person shall transact business in the name of a partner not interested in his firm, and, when the designation ‘and company,’ or ‘& Co.’ is used, it shall represent an actual partner or partners,” and further declares that any person offending against its provisions shall, on conviction, be deemed guilty of a misdemeanor and fined not more than $1,000, this court has held that a person engaged in business in violation of its provisions may, nevertheless, recover a debt contracted in his favor in the course of such business. Halliday v. Bridewell, 36 La. Ann. 240; Kent v. Mojonier, 36 La. Ann. 259; Miller & Co. v. Creditors, 37 La. Ann. 604; Wolfe v. Joubert et al., 45 La. Ann. 1100, 13 South. 806, 21 L. R. A. 772; In re Pelican Ins. Co., 47 La. Ann. 930, 17 South. 427.
But that ruling has never been extended beyond cases in which the recovery was sought in the proper name of the party to whom the debt was due, and it does not purport to abrogate the law which declares that “an action can only be brought by one having a real and actual interest” (C. P. art. 15); and that “a corporation unauthorized by law * * * cannot appear in a court of justice, but in the individual names of all the members who compose it, and not as a political body” (C. C. art. 446). Soller v. Mouton, 3 La. Ann. 541; Workingmen’s Bank v. *1002 Converse, 29 La. Ann. 369; Hincks v. Converse, 37 La. Ann. 484.
Knoxville Plumbing Company is not a judicial entity and has no interest in this litigation and no standing in court, and John P. Moss cannot be accorded a standing in court, in a corporate name, because to make use of a corporate name is a special privilege, not enjoyed by people, generally, of common right, which has not been conferred upon him. The objection that the name of the Campbell Glass & Paint Company does not appear in the condition of the bond falls, perhaps, within the rule that conditions which are omitted from judicial bonds must be supplied and those which are superadded omitted (Byrne v. Riddell, 4 La. Ann. 3; Mason v. Fuller, 12 La. Ann. 68; Parker v. Griffin, 117 La. 977, 42 South. 473); but it is unnecessary to pass upon that question, since the joint appeal in question must be dismissed for the reason that there was no citation, or prayer for citation, upon necessary parties.
On Claims of A. J. Adams et al.
[5] III. The remaining appellants (A. J. Adams et al.) are laborers who appealed by joint motion, in open court, and, no motion to dismiss their appeal having been filed, their claims are to be considered upon their merits, or with reference to other pleadings.
The two contracts out of which this litigation has arisen were entered into on March 26, 1907, and called for the erection of a number of buildings, in the parish of Washington, and the expenditure of $214,915. Some of the buildings were to have been com-X>leted by September 1, and others at various dates up to December 30, 1907. On December 23d the contractors defaulted on said contracts, which were thereafter executed under contract with other parties, at a cost which, as has been stated, left in the hands of the plaintiff a balance, which would have been due to the original contractors had they completed the work, and that balance plaintiff deposited in court, in order that the creditors of the original contractors might interplead with regard to its distribution. Neither of said original contracts was recorded, nor was any bond, taken by plaintiff from the contractors, recorded. Attested accounts, for labor performed and material furnished for the purpose of said original contracts, were recorded during the month of December, 1907, and January, 1908, and perhaps later, and thereafter some of the furnishers of material, proceeding under writs of attachment, or (having obtained judgments against the contractors) under writs of fieri facias, garnished plaintiff and were answered in accordance with the facts, including the facts that attested accounts had been served on it and recorded by certain laborers.
The learned judge a quo, as we understand, from the statements of counsel — his reasons for judgment not having been reduced to writing — rejected the demands of A. J. Adams and others, upon the ground that the furnishers of material or other creditors who thus* made seizures thereby acquired privileges on the fund arising under the contracts ; whereas, the contracts not having been recorded, neither the contractors nor those working under them were entitled to any privileges, and the latter (the laborers) acquired none by attesting their accounts, having them acknowledged by the contractors to be correct, and causing them to be recorded. The view thus taken was predicated upon the law as it existed prior to 1880 and was interpreted in the case of Schwartz v. Oronan, 30 La. Ann. 993, in which case it was said, inter alia:
“The act of 1844 (now incorporated in G. C. 2772), section 4, gives the creditor the same privilege the contractor is entitled to, and none other. The whole theory of this act is that where the workman, etc., has brought himself within its terms, the owner of the building becomes his debtor, and may be sued directly, and compelled to pay the amount ascertained, as. *1004 provided in sections 2 and 3, to be due to him by the contractor, up to the amount due and to become due by the owner to the contractor’. If the contractor has taken the precaution to preserve the privilege, accorded to him by law on the building, the workmen, etc., will be secured by that privilege as legal subrogee; but, otherwise, that act gives him no privilege. The act entitles the creditor, workman, or furnisher of materials to be paid out of the money due and owing to the undertaker; but neither the act nor any article of the Code gives any privilege on the funds in the hands of the owner, except where the creditor, by the adjusting of his account, is entitled to sue and recover of the owner.”
Since the opinion thus quoted, was handed down, this court has somewhat modified its views, even with regard to the law to which the opinion refers (Vordenbaumen v. Bartlett, 105 La. 752, 30 a South. 219); but that law has but little, if any, application in the instant case.
The case of Schwartz v. Cronan was decided in 1878, since which year the Acts Nos. 134 of 1880, 180 of 1894, 123 of 1S96, 134 of 1906, and 65 of 1908 have been passed, the act of 1880 being, when passed, of general application; the act of 1S94, as amended by the act of 1896, applying to cities of over 10,000 inhabitants; the p.ct of 1906 applying to cities of over 50,000 inhabitants; and the act of 1908 applying to “cities having a population of 10,000 or less and to towns, villages and rural districts throughout the state, leaving unimpaired Act 123 of 1896 and Act 134 of 1906 in so far as they affect cities of over 10,000 and over 50,000 population respectively.”
Article 175 of the Constitution of 1879 reads:
“The General Assembly shall, at its first session, pass laws to'protect laborers, on buildings, streets, roads, railroads, canals and other similar works, against the failure of contractors and subcontractors to pay their current wages when due, and to make the corporation, company, or individual for whose benefit the work is done responsible for their ultimate payment.”
; Article 185 of the present Constitution is framed in practically the same language.
Act 134 of 1880 is entitled “An act to carry into effect article 175 of the Constitution * * * and to secure to laborers
and workmen the wages due them in certain cases,” and it provides: That laborers and workingmen, “ * * * when their services are engaged by the proprietor or any agent of the proprietor, * * * shall have a first priyilege upon the buildings or other works upon which their labor has been bestowed”; that, when the work is done by a- contractor or subcontractor for a stipulated price, it shall not be lawful for the owner to pay any part of such price until the laborers have been paid or secured the amounts due them, up to the date of such payment; that no payments or advances shall be made to contractor except in proportion to the work done and in such manner as to leave unpaid, until the completion of the work, a sum sufficient to secure the bills for labor; that any laborer may record his claim “for such amount as will, probably, be due him at the expiration of the work; such recordation to act as a first privilege upon all such work in the event of the violation of this law by the proprietor or his agents; * * * that the amounts to be paid by the owner to such laborers shall not exceed the amount such owner is bound for to his contractor at the time of recording.”
Act No. 65 of 1908 provides, in substance: That building contracts involving the expenditure of $500 and over must be reduced to writing by the owner of the property, who must, also, require of the contractor a bond—
“made payable in favor of the owner for the benefit of himself and any party or parties in interest, * * * conditioned for the faithful performance of the contract and for the payment of the subcontractors, mechanics, painters, plumbers, tinners, carpenters, bricklayers, journeymen, laborers and other workmen, * * * and said contract, together with the bond and surety thereon, shall be recorded * * within seven days after the contract has been signed and before the work is commenced. * * * That the laborer, etc., shall have a right of action — arising immediately up *1006 on the default of the contractor — against the surety on said bond, for the recovery of the amounts due them; that, 'should the owner fail to require the bond, or should the surety prove insolvent, such owner shall be personally liable for all amounts or balances due by the builder, contractor or undertaker to the said * * * laborers and other workmen employed * * * and the furnishers of material, * * * and the said subcontractors, mechanics, painters, plumbers, tinners, carpenters, bricklayers, journeymen, laborers and other workmen and furnishers of material and supplies shall have a first privilege on the land and building for the amount due them; provided they shall have filed for record their sworn bills or accounts in 'the said mortgage office, whether the original contract is recorded or not, within seven days after the completion of the work originally contracted for; provided that such liability shall bq limited to the terms of the recorded contract. ™ ‘ * * That, if, at the expiration of 45 days after the completion of the work originally contracted for, under the terms of this act, there are no sworn bills or accounts recorded or filed of record, * * * the recorder of mortgages shall, upon the written demand of the owner, builder, contractor or undertaker or surety * * * cancel * * * all inscriptions resulting from the recordation of the contract and bond * * *; that the owner * * * shall not be denied the right of questioning the correctness of any accounts, * * * and that all mortgages and privileges recorded previous to signing said contract shall have precedence over all other privileges.”
There is, then, a section (6) regulating the territorial application of the act, as has already been stated, and a section repealing all conflicting laws.
The appellants, being laborers to whom different amounts were, and are, due for labor performed under the building contracts here in question, have more than complied with the requirements of the statutes (and particularly the last) above quoted, by filing for record, and having recorded, in the mortgage office of the parish where the buildings called for by said contracts were erected, .and before the completion of the work so ■called for, their sworn bills or accounts. The ■owner, upon the other hand, failed to have those contracts recorded and failed either to require of the contractors or to have recorded the bond, or bonds, for which the law provides. It is clear therefore that, in common with such “subcontractors, mechanics, painters, plumbers, tinners, carpenters, bricklayers, journeymen, laborers and other workmen and furnishers of material and supplies” as may be similarly situated, the appellants are entitled to be recognized as having privileges upon the land on which the buildings were erected under said contracts and upon said buildings, for the amounts due them, respectively, and it is equally clear, we think, that appellants may demand payment of, and that the owner is entitled to pay, said amounts from the balance due under said contracts, so far as it may go.
It is unnecessary, for the purposes of this case, to consider what conclusion might be reached if the funds on hand were insufficient to meet the demands of the appellants (and of other appellants, if there were others) when added to those of the litigants whom the judgment appealed from decrees entitled to be paid in full. As we understand the situation, the costs are ordered to be paid by preference, under those general provisions of law which so. provide, and the fees of the stenographers and auditors and of the attorney for absent creditors are dealt with as costs. The claims of the Travelers’ Insurance Company and Leonhardt & Co., on the other hand, appear to have been given this preference by reason of their seizures, though as against these appellants they took nothing by such seizures, since the appellant had, in effect, already seized by recording their attested accounts, and the plaintiff so stated in its answer to the interrogatories propounded on behalf of the seizing creditors. However that may be, the appellants do not attack the judgment appealed from, on the ground that the litigants mentioned are not entitled to the preference accorded them, since it will not prevent their being paid in full, also, and there is no one else before the eobrt in a position to make such attack.
*1008 For the reasons thus assigned, it is ordered, adjudged, and decreed that the joint appeal of J. J. Pounds and others, and the joint appeal of True Tagg Paint Company, John P. Moss, Knoxville Plumbing Company, Evans Manufacturing Company, Campbell Glass & Paint Company, and De Wing & Sons, be dismissed. It is further adjudged and decreed that, in so far as it rejects the demands of A. J. Adams and others, the judgment appealed from be avoided and reversed, and that there now be judgment in favor of said appellants, each for the amount here below set opposite to his name, to wit:
A. J. Adams.........$34 45 Alex Bruce.......$ 40 50
A. Figgins............ 21 00 F. A. Turner..... 96 90
A. K. Manlcie........ 8 80 Walter Saunders 45 50
J. King............... 24 00 Geo. Bennett..... 25 20
F. Green.............. 27 05 H. G. Green...... 14 30
L. Ayeock............ 47 60 A. Elleworth..... 76 35 G. H. Mason......... 39 50 Frank Levy (or
Long) .......... 157 04 A. Sliexneilder....... 13 80 J. Delrose........ 176 45
W. L. Archer........ 44 85 H. Leffler......... 52 25
John Shaw........... 74 20 John Montgomery ............. 27 90
Silas Moton......:... 25 20 Fred Parker..... 14 15
J. M. Hill............ 96 25 W. Bennett...... 46 55
It is further decreed that said amounts be paid in full from the fund in the custody of the district court, and that, to secure such payment, each of said appellants be. recognized as having a privilege, second only to such mortgages and privileges as may have been registered prior to the signing of the contracts of March 26, 1907, between plaintiff and Stevenson & Adams, upon the buildings called for by said contracts and, in part, erected thereunder, and upon the land upon which they were erected.
It is further decreed that, in all other respects and save in so far as this decree may operate to amend it, said judgment be affirmed ; the costs of the appeal to be paid, with other costs, from said fund in the custody of the district court.
Note. — In this cause a rehearing was granted by the court on February 3, 1913. But on motion of counsel for the respective parties in interest, presented and filed in open court on May 14, 1913, suggesting that the subject-matter. of the suit had been settled by compromise, in compliance with the wishes of counsel, the court ordered the cause to be dismissed from the docket of the court.